## ACTION TO QUIET TITLE.

Circuit Court of Cuyahoga County.

EDWARD A. STOCKWELL V. MARGARET A. GAMBELL ET AL.*

Decided, February 17, 1906.

*What Sufficient Possession to Maintain an Action to Quiet Title— Possession of Husband Not Constructive Possession of Wife— Heirs of Mortgagee Not in Possession Do Not Inherit Any Rights to Property.*

1. A grantee who goes upon lands which are part of an open common and locates and measures the lots which he has purchased, intending thereby to take possession of them, although he leaves no physical impress of his presence upon the lots, is nevertheless in possession and may maintain an action to quiet title.

2. Where the husband of a mortgagee was in possession of a larger tract of land including the mortgaged premises, at the time the mortgage was given, and remained in possession after condition broken, and until the death of the mortgagee, the possession of the husband can not be construed as the possession of the wife, so as to give her heirs legal title to the mortgaged premises.

3. No rights of possession pass to the heirs of a mortgagee not in possession.

*Snider & Stockwell, T. M. Bates* and *Dissette & Dissette,* for plaintiff in error.

*Joseph Moore, White, Johnson, McCaslin & Cannon* and *J. A. Fenner,* contra.

WINCH, J.; HENRY, J., and MARVIN, J., concur.

This case was heard upon appeal and involves the title to five vacant lots on Lovejoy street, near the city limits.

---

*Affirmed without opinion, *Wilson v. Stockwell,* 78 Ohio State, 394.

The plaintiff alleges that he is the owner and in possession of said lots and asks that his title be quieted as against the claim of certain of the defendants, who are the heirs of Margaret Harrison and William J. Harrison and of certain other defendants, who are the heirs of Warren Farr.

All the parties claim under one John F. Usher, who received a deed of the premises from Stackpole and Osborne on January 5, 1877, on which day he mortgaged said premises to Margaret Harrison to secure the payment of two notes of said date, each for $583.50, payable in one year and two years respectively.

Plaintiff claims under a deed from said John F. Usher, dated July 26, 1899; the Harrison heirs claim under said mortgage and the Farr heirs claim under an assignment of said mortgage. There has never been any foreclosure of the mortgage, but the claim is that the mortgage took possession of the premises after the condition of the mortgage was broken, in 1878, and that she, her heirs and assigns, have been in possession of the premises ever since.

A determination of the case depends upon the question of possession, as to which the evidence is very meager and unsatisfactory and necessarily so, because, for at least the last ten or twelve years, the land has been part of an open common.

Of course, if plaintiff is not in possession of the premises, he can not maintain his action. He testified that he went upon the premises, when he got his deed, located and measured the lots and intended thereby to take possession of the premises. He has been upon the premises about thirty times since, but has left no physical impress of his presence upon the lots, nor has he paid taxes thereon, or exercised any other acts of ownership over the lots. There are certain outstanding tax titles on the lots and part stands forfeited to the state of Ohio. We are inclined to think, the lands being vacant and open, apparently unclaimed by anybody else, that Stockwell's intention to take possession by going upon the land after he received his deed, must be considered as fixing the character of his act, as held in the case of *Clark* v. *Potter*, 32 O. S., 49, and cases therein cited.

Now what are the claims of the defendants? They depend upon whether possession was ever taken under the mortgage of Margaret Harrison, for no twenty-one years exclusive and adverse possession can be claimed by them under the facts of the case.

Under the rulings in the cases of *Kerr* v. *Lydecker,* 51 O. S., 240, and *Bradfield* v. *Hall,* 67 O. S., 316, it appears that while there has been no such thing as strict foreclosure so-called, in Ohio, since the adoption of the civil code in 1853, yet, as between the mortgagor and mortgagee, after condition broken, the legal title to the mortgaged premises is in the mortgagee, and ejectment may be brought upon the mortgage to recover possession of the premises. From this it is argued that if the mortgagee takes possession of the premises after his legal title has become absolute by reason of breach of the conditions of the mortgage, he needs no action of ejectment, and the mortgagor or his assigns, may recover the possession only by offering to redeem. This conclusion seems sound.

With this view of the law in mind, what are the facts as to the mortgagee, or those claiming under her, having taken possession of the premises here involved?

It seems that William J. Harrison, husband of the mortgagee, in 1873 owned about thirty acres of land, including the five lots in question. He sold the thirty acres to Stackpole and Osborne and they subdivided the land into lots and laid out Lovejoy street, on which these five lots front. The subdivision was recorded and furrows or gutters run, defining the street on the land.

But Harrison appears to have remained in possession of twelve to sixteen acres of the land, which was enclosed by a fence on four sides, and included the five sub-lots. He cultivated the lots, and raised crops thereon. Under what arrangement Harrison retained possession, we do not know, but it must have been under his grantees, Stackpole and Osborne.

Harrison was in possession of these lots in 1877, when Stackpole and Osborne sold to Usher and appears to have continued in possession in a rather uncertain manner, until about 1894.

He was in possession when the mortgage under which defendants claim was executed to his wife; he was there when its conditions were broken and he was there when she died in 1885.

There is no evidence that Margaret Harrison, the mortgagee, ever had possession of these lots, and while her husband may have attended to some business for her, his possession of fifteen acres of land, including these five lots of perhaps an acre in all, can not be construed as her possession.

When Margaret Harrison died in 1885, title to the mortgage notes did not pass to her heirs. The syllabus of the case of *McBridge, Admr.*, v. *Vance*, decided by the Supreme Court February 2, 1906, reads:

"1. As a general rule administration is a prerequisite to the devolution of the personal estate of a decedent.

"2. The personal property of a deceased person does not vest in his heirs, but is in abeyance until administration is granted, and is then vested in the administrator, by relation from the time of death, and no right of action on a promissory note belonging to a deceased person is shown by a party in an action on the note, by proof of possession and that he is the sole heir of the decedent."

But it is claimed that Margaret Harrison's legal title under the mortgage passed to her heirs. Her legal title, however, was incomplete; she lacked possession. True, she had the right of possession, but the most that can be claimed is that her naked title, with this right of possession, passed to her heirs, and that, in trust for the owner of the notes.

The heirs of Margaret Harrison never attempted to exercise any right to take possession of the premises, but shortly after their mother's death they executed to their father, William J. Harrison, a quit-claim deed conveying to him "all the title, interest and claim to any and all lands, parcels of land and rights in land owned and possessed by said Margaret Harrison at the time of her death, and which by her death and intestacy has devolved upon us the said grantors, all of said lands and interests in lands being in the 14th ward in the city of Cleveland, county of Cuyahoga and state of Ohio. It being the purpose and

design of this conveyance to transfer to and vest in said grantee, not only such real estate as said Margaret Harrison held at the time of her decease in fee simple, but also any and all equitable interests held by her at her death and descendable to her heirs, howsoever described, and wheresoever found. For a more particular description of which so far as the same is possible, and can be ascertained of record, reference is hereby made to all records and titles of said Margaret Harrison, in the recorder's office of said county.''

If any interest or right in the five lots passed by this deed to William J. Harrison, who was then in qualified possession of the premises, perhaps, by reason of his cultivation of the soil, gathering of hay, or pasturing of his cattle thereon, which one witness testifies to, it was the naked legal title without any beneficial interest, of course, under the law of this state, followed the notes, and they never became the property of William J. Harrison.

One of his sons-in-law who, after the death of William J. Harrison in May, 1899, was appointed and acted as administrator of his estate, testifies that Mr. Harrison continued to cultivate and make some use of the fifteen acres of land, including these lots, for about nine years after his wife's death, or until 1894, when the fences were thrown down, or fell down, and the lots became part of a common over which everybody traveled at will and on which many different persons pastured their cows.

In 1899, four years later and just previous to his death, it is likely that William J. Harrison delivered the mortgage notes to Warren Farr, whose executor was permitted to testify that she found said notes among the effects of said Warren Farr, after his death, as also a paper writing reading as follows:

"CLEVELAND, O., April 24, 1899.

"Received from Warren Farr ten dollars. Down payment of $100 to be paid by said Warren Farr to W. J. Harrison for a quit-claim deed on sub-lots Nos. (five in all) and all papers belonging to said sub-lots to be turned over to said Warren Farr.

"$10.00                              W. J. HARRISON.''

The notes were unendorsed and there is nothing to connect the receipt with either the notes or the lots in question, and it is in evidence that Harrison and Farr had dealings about other lots.

Some effort was made to show that Warren Farr attempted to take possession of these lots in 1899, by removing some top soil therefrom and driving over the lots, but it must be conceded that his possession of the notes gave him no title to them, for that was in abeyance, awaiting administration upon the estate of Margaret Harrison, and the receipt is no conveyance of any legal title to the land.

As first stated, in July, 1899, plaintiff went upon the land with the intention of taking possession thereof under his deed from Usher. He found the lots vacant, unenclosed and used as a common. Under the facts as testified to at the hearing, we think we had a right to believe, as we find, that there was no "mortgagee in possession," to dispute his title or possession.

We have no trouble in arriving at the conclusion, from the evidence, which an attempt has been made to recite fairly, that neither Margaret Harrison, nor any one lawfully claiming under her mortgage, ever had or took possession of the premises in dispute, and if William J. Harrison ever attempted or intended so to do under color of title to the mortgage, he abandoned his possession at least five years before the plaintiff took possession.

It follows that plaintiff has established his legal title to and possession of the premises, and having brought this suit in April, 1901, more than twenty-one years after the maturity of the notes secured by the Margaret Harrison mortgage, all rights thereunder claimed by defendants are barred by the statute of limitations.

As to the tax deeds pleaded by the Farrs, they being ineffectual to pass title, account must be taken of the amount due for taxes paid, as provided by the statute, and a lien therefor provided in the decree drawn in accordance with the holding herein announced, quieting plaintiff's title as prayed for by him.

Judgment for plaintiff.